Glass Krakower LLP
100 Church Street, Suite 800
New York, NY 10007
Telephone: 212-537-6859
Fax: 845-510-2219

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-------------------------------------------------------x

**SHALINI BATTA,**

                       **Plaintiff,**

        **-against-**

**HCL TECHNOLOGIES LIMITED,**

                       **Defendant.**
-------------------------------------------------------x

**COMPLAINT**

Civil Action No.

**July Trial Demanded**

      Plaintiff SHALINI BATTA, by and through her attorneys GLASS KRAKOWER LLP, upon personal knowledge as to herself and upon information and belief as to other matters, brings this Complaint against Defendant HCL TECHNOLOGIES LIMITED ("HCL") and alleges as follows:

## INTRODUCTION

      1.     Plaintiff brings this lawsuit seeking recovery against Defendant for Defendant's violations of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") including Title VII's anti-retaliation provisions, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2617, and the New Jersey Family and Medical Leave Law, N.J.S.A. §§ 34:11B-1, *et seq.* ("NJFMLL").

2. Plaintiff seeks economic, compensatory, punitive damages, and other appropriate legal and equitable relief pursuant to federal law.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's Title VII and FLMA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

4. This Court has subject matter jurisdiction over Plaintiff's NJFMLL claim pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

5. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

## ADMINISTRATIVE PROCEEDINGS

7. Plaintiff has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit.

8. The U.S. Equal Opportunity Employment Commission ("EEOC") has issued a Right to Sue Letter, dated May 12, 2017 to Plaintiff herein, which letter is attached at the end of this Complaint.

## PARTIES

9. Defendant HCL is an Indian multinational IT services company, a subsidiary of

HCL Enterprise, doing business in 34 countries, including the United States.

10. Defendant HCL regularly transacts business in the State of New Jersey

11. Defendant HCL maintains a main business address at 1 Evertrust Plaza, Jersey City, New Jersey 07302 in Hudson County.

12. Defendant HCL has designated the following agent for service of process within the State of New Jersey: The Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey 06828.

13. At times relevant to this Complaint, Defendant HCL (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

14. At all times material and relevant to this action, the Defendant HCL has been and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b)

15. At all times material and relevant to this action, the Defendant HCL has been and is an "employer" within the meaning of the FMLA, as defined by 29 U.S.C. § 2611.

16. At all times material and relevant to this action, the Defendant HCL has been and is an "employer" within the meaning of NJFMLL, as defined by N.J.S.A. § 34:IIB-3(f)(3).

17. Plaintiff is an adult resident of Jersey City, New Jersey, in Hudson County, and at all times relevant herein was a Senior Area Director / Account Manager for Defendant HCL.

18. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA, as defined by 29 U.S.C. § 2611(2).

19. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of NJFMLL, as defined by N.J.S.A. § 34:IIB-3(e).

## FACTUAL ALLEGATIONS

20. Defendant committed the acts and omissions alleged herein knowingly, intentionally, willfully, and maliciously.

21. Plaintiff was employed by Defendant as a Senior Area Director / Account Manager from September 9, 2010 until October 15, 2015, when Defendant unlawfully terminated Plaintiff's employment.

22. At all times relevant to this Complaint, Plaintiff performed her duties fully, faithfully, effectively, efficiently, and in a manner that exceeded Defendant's reasonable business expectations of a Senior Area Director / Account Manager within Defendant's workforce.

23. While working for Defendant HCL, Plaintiff was repeatedly subjected to ongoing discrimination and hostile work environment based on her sex and gender in violation of Title VII.

24. The atmosphere at HCL's offices both permitted and promoted sex discrimination.

25. Upon information and belief of Plaintiff, Defendant HCL rarely hires women for management positions.

4

26. Upon being hired by Defendant HCL on September 9, 2010, Plaintiff's supervisors treated her in a misogynistic and demeaning fashion.

27. Plaintiff consistently outperformed her male counterparts as a Senior Area Director / Account Manager.

28. For example, the size of her portfolio grew significantly in comparison with others, and her relationship with clients led to greater increases of business when compared with her male colleagues.

29. Despite her superior performance, Plaintiff never once received a promotion or raise, unlike her male counterparts.

30. In June 2014 Plaintiff informed her manager, Mani Nagasundaram, that she was pregnant.

31. After informing her manager that she was pregnant, Plaintiff experienced further unequal treatment by Defendant HCL.

32. Specifically, Mr. Nagasundaram stopped responding to Plaintiff's emails and Plaintiff was given unrealistic work expectations and goals—different from her male-counterparts—that she could not realistically achieve.

33. In July 2014, during her 2014 performance appraisal, Plaintiff was denied a raise and promotion without any rational justification.

34. The proffered reason for Plaintiff's denial of a raise and promotion was due to her inability to travel.

35. However, as Plaintiff had repeatedly explained to management, her inability to travel was due to medical complications related to her pregnancy.

36. Nevertheless, Plaintiff's superiors denied her request for reconsideration.

37. On September 13, 2014, Plaintiff delivered her daughter, Simran, through an emergency cesarean section.

38. Due to her fear of losing her job with Defendant HCL, stemming from the constant hostility and material threats she had been receiving as well as the fact that Plaintiff's supervisors had discussed replacing her with a male counterpart, Plaintiff ultimately decided not to request maternity leave.

39. When Plaintiff communicated her decision not to go on maternity leave to her superiors, she learned that she would not be allowed to return to work without medical clearance.

40. Upon Plaintiff's information and belief, this requirement was a pretext for her superiors to replace her with a male counterpart from Singapore, Rajat Basu.

41. Upon Plaintiff's further information and belief, Mr. Nagasundaram favored Mr. Basu, even though he consistently underperformed, and indeed, lost most of his portfolio.

42. Upon returning to work in October 2014 after a bitter battle with Human Resources, and in apparent retaliation for her refusal to go on maternity leave, Plaintiff was—for the first time—denied the option to work from home.

43. Instead, Mr. Nagasudaram and later Mr. Basu required that Plaintiff work out of the HCL Evertrust Plaza office from 9 a.m. to 6 p.m.

44. This requirement was especially offensive in light of Mr. Nagasundaram having previously been put on notice that Plaintiff felt uncomfortable working out of this particular office, as there were no other women in the office and there were no security cameras in place to ensure employee security.

45. When Plaintiff questioned Mr. Nagasundaram and her other supervisors why she was now required to work at the Evertrust Plaza office, Mr. Nagasundaram did not provide an explanation.

46. When Plaintiff further questioned Mr. Nagasundaram about why other account managers in the United States and other geographic areas were allowed to work out of their home, Mr. Nagasundaram did not respond.

47. Over the next several months, Plaintiff experienced an ongoing pattern of harassment and intimidation.

48. For example, Plaintiff received hostile and intimidating emails for even the smallest requests.

49. Plaintiff was also denied a raise and promotion, and was not even considered for a promotion, in November 2014.

50. Furthermore, Mr. Nagasundaram slowly moved parts of Plaintiff's portfolio to her male counterparts in London.

51. This began in October 2014, and continued until Plaintiff's dismissal.

52. When Plaintiff voiced her concern regarding this improper movement of her portfolio, Mr. Nagasundaram dismissively told her, in front of her entire team, to "stop this nonsense" and that she was not being a "team player."

53. Mr. Nagasundaram's overall conduct towards Plaintiff humiliated her and degraded her sense of self-worth.

54. Following the aforementioned discrimination by Mr. Nagasundaram, Plaintiff, via email and text, repeatedly told Mr. Nagasundaram that his conduct was not acceptable in the professional environment.

55. Unsurprisingly, Mr. Nagasundaram, thereafter, ceased responding to Plaintiff's emails or queries relating to work, yet continued to degrade her value and sense of self-worth through derogatory comments made in emails in which Plaintiff's colleagues were copied.

56. On or about March 19, 2015, Mr. Nagasundaram and Plaintiff agreed that Plaintiff would operate out of India until May 15, 2015.

57. While Plaintiff was working out of India, her mother, who suffers from diabetes, experienced a number of medical complications, including a life-threatening medical emergency.

58. On or about May 29, 2015, Plaintiff notified HCL that her mother was sick and that she needed to extend her stay to care for her as well as for her ailing father.

59. In so making her request, Plaintiff requested Family Medical Leave Act ("FMLA") leave or in the alternative permission to apply for vacation retroactive to May 15, 2015.

60. Mr. Nagasundaram denied Plaintiff's vacation request but did not directly respond to her FMLA request, instead stating that such a request is "difficult" and that he would be referring the matter to Human Resources.

61. As such, during the month of June 2015, Plaintiff continued to work in India in order to care for her parents under the assumption that her FLMA request had been approved.

62. On June 17, 2015, Jaya Kiran Satish from Human Resources informed Plaintiff that she needed to formally apply for FMLA leave and that going forward she should ensure that her leave is approved and entered into the system.

63. In response, on June 18, 2015, Plaintiff informed Ms. Satish, as well as Mr. Nagasundaram and her supervisor, that she had formally applied for FMLA leave.

64. Plaintiff was able to return to work in the United States on or July 1, 2015.

65. Plaintiff soon learned that her reporting supervisor was Mr. Basu, who had been promoted, and no longer Mr. Nagasundaram.

66. Additionally, Ms. Satish from Human Resources informed Plaintiff that Human Resources was investigating Plaintiff, despite the fact that Plaintiff made repeated complaints to Human Resources regarding the treatment she had received.

67. In or around July 2015, Plaintiff's backdated leave request from May 15 until May 29, 2015 was approved.

68. In July 2015, Plaintiff learned that Mr. Basu would be conducting her annual performance review, despite having just been promoted and vocally expressing displeasure that Plaintiff consistently outperformed her male counterparts.

69. By emails dated July 17, 2015, Plaintiff complained to Mr. Nagasundaram and his supervisors, Parag Samarth and Klaus Hank, as well as to Ms. Satish and Ramchandran Sundararajan, Director of Human Resources, that she was being retaliated against because of her pregnancy.

70. On July 23, 2015, Klaus Hank, Global Client Partner / Senior Vice President, who was visiting from London, requested Plaintiff's presence the following day.

71. Plaintiff informed Mr. Hank that she had a medical appointment because she had been experiencing dizziness and black spots in her vision due to the stress that she was experiencing from the hostile work environment she faced day in and day out.

72. Although Mr. Hank directed Plaintiff to cancel the appointment, she went to see her doctor on July 24, 2015.

73. Plaintiff was diagnosed with high blood pressure and directed to rest while she was placed under observation.

9

74. After Plaintiff returned from her doctor appointment, Mr. Hank continuously harassed her about missing the above-mentioned meeting, completely dismissing her health concerns.

75. Further, Mr. Basu directed Plaintiff to remain in the empty office, Evertrust Plaza, until 8 p.m., again completely disregarding Plaintiff's health issues and safety concerns.

76. Thereafter, Mr. Basu directed Plaintiff to continue working out of the Evertrust Plaza location.

77. Plaintiff requested that Mr. Basu provide some guarantee that Plaintiff would be safe working in this empty office, but Plaintiff did not receive any response.

78. On or about August 27, 2015, Plaintiff learned that she was the subject of an investigation, confirming the comments made by Ms. Satish several months earlier.

79. When Plaintiff asked Human Resources for a description of the allegations, she received no response.

80. In or around early September 2015, Gordon Sanders, the investigator assigned to Plaintiff's case, demanded that she respond to the charges.

81. Plaintiff informed Mr. Sanders that she had yet to be informed of the actual allegations against her, and as such could not make a statement.

82. After numerous requests to Human Resources, on or about October 1, 2015, Plaintiff finally received a summary of the allegations against her.

83. The allegations alleged, in sum and substance, that Plaintiff engaged in unauthorized absences by staying in India to care for her parents, and that she did not cooperate with her new manager, Mr. Basu.

84. Plaintiff thereafter submitted a response to the allegations against her, effectively rebutting the allegations, and denies the allegations.

85. Plaintiff additionally was never provided an opportunity to speak or meet with the investigator.

86. On or about October 6, 2015, Mr. Klaus emailed Plaintiff with questions as to whether she had achieved her Quarter 1 and Quarter 2 goals, to which she responded that she had been meeting them up until the point when her accounts were re-assigned to Mr. Basu.

87. Specifically, Mr. Basu re-arranged Plaintiff's portfolio so that she continuously lost work opportunities at the expense of her male counterparts.

88. As a result, Plaintiff faced an impossible task of meeting her sales goals because she no longer had access to the same portfolio as when her sales goals were made.

89. Further, as Defendant HCL had completely looped her out of team emails and Mr. Basu directly managed Plaintiff's portfolio, she had no input into team strategy.

90. On October 9, 2015, Plaintiff sent a letter to Raghu Raman Lakshmanan, the Senior Vice President and General Counsel, informing Defendant HCL that she believes she is being discriminated against for her sex and pregnancy, as well as being retaliated against for requesting FMLA leave to care for her mother.

91. On October 12, 2015, Plaintiff received a response from Manisha Aurora, Senior Attorney, informing her that Defendant HCL is in receipt of her October 9, 2015 letter and would be investigating the matter internally.

92. However, three days later, on or about October 15, 2015, Defendant HCL terminated Plaintiff's employment by letter.

93. Defendant's actions evidenced a pattern and practice of knowingly tolerating and encouraging the discrimination and unequal treatment of Plaintiff.

## FIRST CAUSE OF ACTION
### (Sex Discrimination in Violation of Title VII)

94. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

95. At all times relevant to this Complaint, Defendant HCL was and is an employer as that term is defined by Title VII, 42 U.S.C. § 2000e(b).

96. Plaintiff is a woman and belongs to a group protected by Title VII.

97. Plaintiff was pregnant and belongs to a group protected by Title VII.

98. Plaintiff was subject to substantial and persistent unequal treatment on the basis of her sex.

99. To the extent that Defendant HCL provided any avenue of complaint, Plaintiff reasonably availed herself of the Human Resources and other complaint procedures Defendant provided to its employees.

100. Discrimination on the basis of sex is actionable under Title VII.

101. Plaintiff was denied the option to work from home during her employment, different from her male counterparts.

102. Plaintiff was denied raises and promotions due to her sex and pregnancy.

103. Plaintiff was subjected to a hostile work environment due to her sex and pregnancy.

104. The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

105. Defendant HCL is liable for the acts alleged herein because Defendant HCL's managers established a managerial culture that tolerated and encouraged sexual discrimination and harassment.

106. Defendant HCL was aware of, and is directly and vicariously responsible for, such harassment and discrimination.

107. Defendant HCL failed to exercise reasonable care to prevent and correct promptly any harassing behavior based on sex.

108. Defendant HCL engaged in unlawful employment practices and unlawful discriminatory as those term are defined by Title VII, including Plaintiff's termination on October 15, 2015.

109. These acts violate Title VII and are illegal.

110. In taking the above described discriminatory actions, Defendant HCL acted with malice and reckless indifference to Plaintiff's rights pursuant to Title VII, giving rise to punitive damages.

111. As a direct and proximate result of Defendant HCL's aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation

## SECOND CAUSE OF ACTION
### (Title VII – Retaliation)

112. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

113. Title VII, specifically 42 U.S.C. § 2000e-3, makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

114. By objecting to sexual discrimination, Plaintiff engaged in a protected activity.

115. By complaining about sex discrimination, Plaintiff engaged in an activity protected by Title VII.

116. Defendant HCL was aware that Plaintiff had engaged in the protected activity of complaining about sex discrimination.

117. Defendant Vornado took an adverse employment action against Plaintiff and materially adverse change in the terms and conditions of her employment.

118. A causal connection exists between Plaintiff's complaints about sex discrimination the adverse employment action Defendant HCL took.

119. Defendant HCL retaliated against Plaintiff for her complaints in violation of the anti-retaliation provisions of Title VII.

120. By its conduct, the Defendant subjected Plaintiff to unlawful retaliation in violation of Title VII.

121. As a result of such conduct by the Defendant, Plaintiff has suffered damages and is entitled and is entitled to compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of the Defendant's illegal conduct.

122. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## THIRD CAUSE OF ACTION
### (Retaliation in violation of the FMLA)

123. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

124. Based upon the foregoing, Defendant deliberately, intentionally and willfully violated the FMLA by interfering with the attempted exercise of Plaintiff's rights under the FMLA, 29 U.S.C. 2615 (a)(1) and retaliating against Plaintiff for requesting the FMLA leave by subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

125. As a result, Plaintiff suffered damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Retaliation in violation of the NJFMLL)

126. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

127. Based upon the foregoing, Defendant deliberately, intentionally and willfully violated the NJFMLL by interfering with the attempted exercise of Plaintiff's rights under the NJFMLL, N.J.S.A. §§ 34:11B-1, *et seq.*, and retaliating against Plaintiff for requesting family medical leave by subjecting Plaintiff to a hostile work environment and terminating Plaintiff's employment.

128. As a result, Plaintiff suffered damages in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL**

129. Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered on her behalf in accordance with the above claimed causes of action and requests the following:

A. All compensatory and economic damages;

B. All reasonable expenses incurred by Plaintiff, including court costs and other relief, both in law and equity, to which Plaintiff may show herself justly entitled;

C. Attorneys' fees;

D. Punitive and statutory damages as authorized by statute;

E. Pre-judgment and post-judgment interest; and

F. Such further relief as the Court finds just and proper.

Dated:      August 9, 2017
            New York, New York

                                Respectfully Submitted,

                                GLASS KRAKOWER LLP

                                By: _____/s/ _____
                                    Bryan D. Glass, Esq.
                                    100 Church Street, Suite 800
                                    New York, NY 10007
                                    (212) 537-6859
                                    Attorneys for Plaintiff

EEOC Form 161 (11/16)      **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Shalini Batta<br>1 Harborside Place<br>#326<br>Jersey City, NJ 07311 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-03444 | Linda E. Ingle,<br>Investigator | (617) 565-3194 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____      MAY 12 2017
Feng K. An,                            *(Date Mailed)*
Area Office Director

Enclosures(s)

cc:
Director of Human Resources      Bryan D. Glass
HCL Technologies                   GLASS KRAKOWER
330 Potrero Ave                      100 Church St
Sunnyvale, CA 94085             8th Floor
                                             New York, NY 10007